**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.: ________________**

FILED BY ____ D.C.
NOV 19 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**STEPHEN MARKS,**
**Plaintiff,**

**v.**

**AMAZON.COM, INC.,**
**Defendant.**

---

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**
**(INJUNCTIVE RELIEF DEMANDED)**
**JURY TRIAL DEMANDED**

---

Plaintiff STEPHEN MARKS, appearing pro se, brings this Complaint against Defendant AMAZON.COM, INC. for damages and injunctive relief, and in support thereof states as follows:

## A. SUMMARY OF THE ACTION

1. Plaintiff STEPHEN MARKS ("Marks") brings this action for willful violations of his exclusive rights under the Copyright Act, 17 U.S.C. § 501, stemming from Defendant's unauthorized reproduction, digital data ingestion, distribution, and creation of an unauthorized derivative work utilizing Marks' original, uniquely arranged, and federally copyrighted sound recording.

2. Plaintiff STEPHEN MARKS has been a successful professional musician and songwriter for 50 years, specializing in piano. He has performed at major venues in New York City, Nashville, TN, Washington DC, and south Florida. He has performed and specialized in music by The Beatles, performing on the Beatles circuit at "Fest for Beatles Fans" (Chicago and New York), "Abbey Road on the River" (Louisville, KY), and "Beatles on the Beach" (Delray Beach, FL). He has also written novelty songs featured on the "Dr. Demento" show and other radio stations.

3. Defendant AMAZON.COM, INC. ("Amazon") is an American multinational technology company focusing on e-commerce, cloud computing, online advertising, digital streaming, and artificial intelligence technologies. At all times relevant herein, Amazon owned and operated the internet YouTube account located at the URL youtube.com (the "Website").

**4.** Marks alleges that Amazon illegally scraped, analyzed, and copied Marks's copyrighted Work via proprietary digital processing or **<u>Artificial Intelligence</u> technologies in order to generate a deceptive clone of the track** to advertise, market, and promote its global commercial business activities. Amazon committed these violations willfully in connection with Defendant's business for purposes of advertising and promoting holiday retail sales to the public in the course and scope of Amazon's corporate business operations. **See Exhibit 1, containing two Expert Witness**

1. **Musicologist reports entitled *A Comprehensive Forensic Musicology Report 'In My Life' – Marks v. Amazon,* by Dr. Robert Tomaro, Ph.D., LLC.** (Note: The numbered list, Items 1-7, appearing at the bottom of page 22 and continuing on the top of page 23 in the second report (immediately following Dr. Tomaro's conclusion and preceding his CV) consists of important timing and melodic comparison observations supplied by Marks that Dr. Tomaro agreed to include in his report, but inadvertently left in Marks' own unedited phrasing prior to transmitting the final PDF. Dr. Tomaro's independent forensic findings and analysis appear throughout the body of that second report above his conclusion, as well as throughout his first report. A clean copy formatting those observations in Dr. Tomaro's own words will be provided shortly.)

2. **Dr. Tomaro's reports are powerful and his credentials are beyond dispute,** having been an expert witness musicologist in the following cases, many in which he was deposed, including *Madonna v. Cyndi Lauper, Gee v. Justin Timberlake, Ciero v. Disney Lee, Demeritt v. Lil Nas X, Salinas v. Procter & Gamble, Piroli vs. EMI, Fernandez v. Mick Jagger and Keith Richard, Grigson v. Disney, LaCrate v. Beyonce, Brown v. Billie Eilish, LaCrate v. Pitbull, Davis v. Camilla, Cabello and Shawn Mendes Smith v. Sage the Gemini* and *Johnson v. Nicki Minaj.*

6. **These reports in great detail make the case that Marks' work was used to create the Amazon ad, and that it was created by AI and not a musician. This is explained in detail below, as well as how Defendant originally credited 31 people with creating the commercial when it was released, but never credited any pianist until two years later when they re-ran the ad.**

**B. JURISDICTION AND VENUE**

7. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

8. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Defendant Amazon is subject to personal jurisdiction in Florida because it purposefully avails itself of the laws of the State of Florida, conducts substantial, continuous, and systemic commercial retail operations within Florida, and purposefully directs its advertising, e-commerce transactions, and digital streaming platforms toward consumers within the State of Florida and this judicial district.

10. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a) because a substantial part of the events giving rise to the claim occurred in this district, Defendant engaged in widespread broadcast and digital distribution of the infringing work to consumers in this district, Defendant conducts systematic business within this district,

and Plaintiff resides and suffered the severe economic and professional harm caused by the infringement within this district.

11. Amazon owns and operates the fully interactive Amazon online website at amazon.com ("Amazon.com"), which is continuously accessible to residents within Florida. Amazon.com is an online store that sells an endless variety of consumer goods including clothing, groceries, and home accessories to Florida residents. Florida and Broward County residents can readily access Amazon.com and are able to purchase an endless variety of goods for direct shipping to their local homes.

12. Amazon is subject to personal jurisdiction in this district pursuant to Florida Statutes § 48.193 (Florida's Long-Arm Statute) because its tortious acts and unauthorized commercial exploitation of Plaintiff's copyrighted audio Work directly caused, and continues to cause, severe injury and economic damage to the Plaintiff within the State of Florida.

13. Defendant Amazon.com, Inc. is a Delaware Corporation, with its principal place of business at 410 Terry Avenue North, Seattle, WA, 98109, and can be served by serving its Registered Agent, Corporation Service Company, 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, WA 98501.

## C. THE COPYRIGHTED WORK AT ISSUE

14. Marks is the sole owner and creator of the unique, slowed-down, classical-infused sound recording of the musical composition "In My Life." In 2019, Marks created this highly distinct, original master sound recording of a derivative piano composition based on the musical composition "In My Life" by The Beatles, entitled "In My Life," which is attached as **Exhibit 2** and referred to herein as the "Work."

15. Marks' unique derivative recording is sufficiently original, distinct, and creative to merit federal copyright protection. Marks' specific stylistic arrangement of "In My Life" transforms the track into a classical, Beethoven-esque piano solo that is completely unique and substantially unlike any other existing cover arrangement of the piece in the world. Plaintiff's expert musicological analysis also reveals that the track contains specific sonic markers, wave structures, and execution dynamics identical exclusively to Plaintiff's copyrighted sound recording.

**16.** This original audio work is fully protected under United States Copyright Law. Marks registered the Work with the United States Register of Copyrights on November 27, 2023, and was assigned Sound Recording registration number SR0000981607. The Certificate of Registration is attached hereto as **Exhibit 3.**

17. At all relevant times, Marks was, and remains, the sole legal owner of the copyrighted sound recording Work at issue in this case. Plaintiff's

claim is brought strictly to vindicate his rights in his proprietary sound recording under federal law against a third-party copyist, independent of any underlying publishing administration rights.

## D. INFRINGEMENT, DECEPTIVE TIMELINE, AND FABRICATION BY AMAZON

18. Amazon has never been licensed, authorized, or permitted to use, copy, sample, or replicate the Work at issue in this action for any purpose whatsoever. Amazon had direct access to the Work because it was on the internet promoting Marks' CD "The Beatles Haunting Melodies," later changed to "The Overlooked Beauty of The Beatles Melodies." Marks had also performed the song and sold CDs at the various venues on the Beatles Circuit mentioned above that drew thousands of Beatles Fans ("Fest for Beatles Fans (Chicago and New York)," "Abbey Road on the River (Louisville, KY)," and "Beatles on the Beach" (Delray Beach, FL)).

19. On a date after the Work at issue in this action was created and registered, but prior to the holiday season of 2023, Defendant Amazon copied, processed, and computationally reproduced the unique audio architecture of Plaintiff's Work highlighted by the beautiful piano music to stir the emotions of the viewers.

20. On or about November 19, 2023, Plaintiff discovered that Defendant Amazon.com, Inc., alongside its agents and contractors, utilized

Plaintiff's copyrighted sound recording without authorization in a widely distributed commercial campaign titled "Joyride" (also distributed as "Joy Ride"). As soon as Marks saw the commercial, he contacted counsel, who told him to immediately file for a Sound Recording copyright with the federal copyright office in Washington, D.C. Marks paid a $700 fee to the copyright office that day to expedite his request so the office could get it issued within 5 business days or less.

21. The unauthorized corporate derivative use of his unique piano audio Work featured prominently as the emotional and structural soundtrack of Amazon's global holiday television commercial. When the "Joyride" campaign initially launched on November 13, 2023, in the US, Defendant broadcasted and distributed the commercial globally across national television and digital media.

22. As stated earlier, upon information and belief, and as supported by Plaintiff's retained expert musicologist, the piano performance featured in Defendant Amazon's "Joy Ride" commercial was not played by a live human musician but was instead generated using artificial intelligence ("AI") derived from Plaintiff's copyrighted sound recording.

23. **Defendant Amazon's own public statements, credit sheets, and third-party trade releases corroborate that no human pianist was**

**credited as performing the track for over two years following the commercial's release. *See* Exhibit 4.** For example:

a. On November 6, 2023, when Defendant Amazon launched the "Joy Ride" advertisement, its official corporate press releases (published on About Amazon and distributed to major media outlets including Adweek and Daily Commercials) described the soundtrack generically as an "instrumental rendition" or "cover" of The Beatles' "In My Life," omitting any credit to a pianist, performer, or arranger.

b. Although third-party audio agency DLMDD issued a separate trade press release on November 6–7, 2023 (published in Campaign UK, Campaign Asia, and Marketing Communication News), **that release credited Spanish musician Nico Casal strictly as the "arranger" of the piece—not as the pianist or performer—and Defendant Amazon itself omitted Casal entirely from its corporate press releases and from its May 2024 industry award submissions to The One Show.**

**c. Even when Defendant Amazon re-released the "Joy Ride" commercial for its November 2025 holiday campaign, its corporate promotional materials and**

**coverage (including Adweek on November 4, 2025) again omitted any credit to Casal as either a pianist or arranger.**

**d. It was not until December 2, 2025—more than two years (757 days) after the commercial's initial release—that Defendant Amazon first attached its corporate name to a performer credit for Nico Casal** alongside The City of Prague Philharmonic Orchestra upon releasing a commercial single under the copyright "2025 Amazon x DLMDD."

**24.** Defendant Amazon's complete omission of a performer credit for over two years—combined with early trade descriptions that identified Casal solely as an "arranger" rather than the pianist—**corroborates the beliefs in Plaintiff's musicological findings that the commercial's piano track was generated via AI from Plaintiff's recording rather than performed by a live pianist.**

**25.** As noted above, in the publication Ad Week, released on November 6, 2023, Defendant's executive praised the ad and credited 31 people for the ad, including the following production team members: Director Wayne McClammy, Production Company Hungry Man, Managing Partner Kim Dellara, Producer Rick Jarjoura, DOP Jess Hall, Editing House Cabin Editorial Editor Chan Hatcher, Colorist Ricky Gausis, VFX The Mill, Sound House Lime Studios and Sound Engineer Joel Waters. **But they**

**inexplicably never credited the pianist who was arguably the person most responsible for the greatness and success of the ad. It seems peculiar that the "colorist" was credited but not the pianist.**

26. Upon information and belief, this initial withholding of musical credit **reflects Amazon's corporate awareness** that the underlying audio track was generated via synthetic machine extraction and Artificial Intelligence technologies rather than human performance.

27. Upon information and belief, Plaintiff alleges that Amazon's sudden retroactive attribution to third-party vendors and external musicians was a bad-faith, preemptive corporate strategy designed to insulate Amazon from direct liability. Defendant's unauthorized extraction and conversion of Plaintiff's physical audio data via AI engineering allowed it to output a simulated "sound-alike" trasck in a slightly altered key. This technological extraction directly bypasses the protections and exceptions outlined in 17 U.S.C. § 114(b), as the resulting work is not an entirely independent fixation of separate sounds, but rather a direct technological derivative of Plaintiff's actual audio file.

**28. This defensive corporate alibi involving a third-party recording is a physical, musical, and scientific impossibility, definitively unmasked by the mathematical, acoustic, and digital findings in Plaintiff's Musicologist expert analysis reports. As proven**

**by Dr. Tomaro, the track contains simultaneous note combinations that mathematically <u>require two thumbs on the same note</u>, proving it could not have been organically recorded by a single physical pianist, leading to the conclusion that it was created by Artificial Intelligence.**

29. Dr. Tomaro also provides powerful circumstantial evidence in his report that Defendant's version of "In My Life" was directly stolen from Marks, as well as the fact that Defendant's version of "In My Life" was the only one of the many cover versions of the song that remotely sounded like Marks' version, flagrantly stealing his "Beethoven-like style." Both versions featured the first verse of "In My Life" very much slowed down in rhythms to the exact length of Defendant's commercial, 60 seconds. Dr. Tomaro's report is powerful, and his credentials are beyond dispute, having been an expert witness musicologist in multiple federal and intellectual property litigations, including those mentioned above.

30. Defendant abruptly pulled the "Joyride" commercial from its global broadcast rotation during the 2024 holiday season. However, in 2025, Amazon aggressively re-released, re-aired, and heavily monetized the identical infringing commercial for the 2025 holiday cycle. Despite Defendant's assertions in the media that they will not be airing the ad again this year, Plaintiff nonetheless considers the possibility that Defendant might intend to resume widespread national broadcast and streaming of the

unauthorized, cloned audio Work between Thanksgiving and Christmas of the current 2026 calendar year, threatening continuing, compounding, and irreversible economic and brand exploitation of Plaintiff's intellectual property.

**E. COUNT I: WILLFUL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

31. Marks incorporates the allegations of paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. Marks owns a valid, fully registered federal copyright in the sound recording Work at issue in this case. Marks registered the Work at issue in this case with the United States Register of Copyrights pursuant to 17 U.S.C. § 411(a). Defendant's unauthorized digital ingestion, copying, reproduction, and distribution of the Work without Marks' authorization directly violates his exclusive creator rights under 17 U.S.C. § 106 and § 501. Amazon made an unauthorized derivative audio clone of the Work via automated Artificial Intelligence extraction, bypassing the protections of 17 U.S.C. § 114(b) by utilizing Plaintiff's actual audio data rather than establishing an entirely independent fixation of sounds.

33. Amazon performed the acts alleged knowingly, intentionally, and in the direct course and scope of its commercial corporate business activities to avoid licensing fees and boost quarterly revenues. Defendant's

acts were willful, malicious, and executed with reckless disregard for federal copyright protections and the rights of independent musicians. Marks has been severely damaged financially, emotionally, and professionally by the unauthorized commercial exploitation of his master recording. The ongoing, daily public broadcasting of the cloned track by a multi-trillion-dollar tech conglomerate has caused, and continues to cause, irreparable harm to Marks for which there is no adequate remedy at law.

**F. JURY DEMAND**

34. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff STEPHEN MARKS respectfully requests that this Court enter judgment in his favor and against Defendant Amazon.com, Inc., and award the following relief:

Declaratory Judgment: A judgment declaring that Defendant has willfully infringed Plaintiff's copyrighted sound recording in violation of the United States Copyright Act, 17 U.S.C. § 501;

Injunctive Relief: That Amazon and its corporate officers, agents, servants, employees, parent companies, affiliated tech entities, and all of those in active concert or participation with them, be preliminarily and

permanently enjoined from continuing to broadcast, stream, host, or commit further acts in violation of 17 U.S.C. § 501 regarding the Work, specifically prohibiting the airing of the "Joyride" commercial for the current 2026 holiday season;

Actual Damages and Disgorgement of Profits: An award of all actual damages suffered by Plaintiff as a result of the infringement, plus a disgorgement of all profits, revenues, and financial windfalls realized by Defendant that are attributable to the unauthorized reproduction, adaptation, and commercial use of Plaintiff's copyrighted work, pursuant to 17 U.S.C. § 504(b);

**No Damages Cap Under *Nealy*:** An order declaring that, pursuant to *Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135 (2024), Plaintiff is entitled to recover the entirety of his actual damages and Defendant's profits spanning the full duration of the infringement, without any retrospective time-limitation or cap;

Pre-Judgment and Post-Judgment Interest: An award of pre-judgment and post-judgment interest on all monetary sums awarded, from the date the infringement began until the judgment is fully satisfied, as permitted by law;

Recovery of Costs: An award of all allowable out-of-pocket costs, filing fees, administrative fees, and expert witness expenses incurred by Plaintiff in the prosecution of this action, pursuant to 17 U.S.C. § 505; and

Other Just Relief: Such other, further, or alternative relief as this Court deems just, equitable, and proper under the circumstances.

Dated: November __, 2026

Respectfully submitted,

STEPHEN MARKS, Plaintiff Pro Se
3115 Northeast 28th Street, Ste. No. 8
Fort Lauderdale, FL 32308
Tel. (305) 900-7747
Email - Marks.Music57@Gmail.com